IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ITP, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OCI COMPANY, LTD., | : | |
| OCI INTERNATIONAL, INC., | : | |
| UNIVAR USA, INC., and | : | |
| JOHN DOES 1 THROUGH 5 | : | No. 11-CV-0458 |

**MEMORANDUM AND ORDER**

J. William Ditter, Jr.                                                    March 26, 2012

In this case, the plaintiff, ITP, Inc., contends it had an exclusive distributorship agreement that was breached.  It seeks relief through a variety of legal theories.  The matter is before me on a motion by defendant OCI International, Inc. ("OCI USA") to dismiss ITP's amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b) and 9(b). (Doc. # 32).

For the reasons that follow this motion is GRANTED in part, and DENIED in part.

**I.  FACTUAL BACKGROUND**[1]

ITP's amended complaint against OCI USA alleges breach of contract, promissory estoppel/detrimental reliance, common law fraud, negligent misrepresentation, breach of fiduciary duty, tortious interference, violation of Pennsylvania's Uniform Trade Secrets Act, unjust enrichment, unfair competition, violation of the Robinson-Patman Act, vicarious liability, and an

---

[1] I accept as true the facts and allegations contained in the amended complaint and all reasonable inferences drawn therefrom and view the facts in the light most favorable to ITP as the non-moving party.

action to pierce the corporate veil between OCI  USA and OCI Company, Ltd. (OCI Korea).[2]

ITP is a domestic distributor of chemical products, including a chemical known as fumed silica.  It has sold fumed silica to other United States "sub-distributors" for sale to end-users in the United States.  Prior to its dealing with the defendants, ITP primarily distributed a fumed silica product produced by a Ukrainian company and sold under the brand name Orisil.

In September 2008, when ITP experienced difficulty obtaining Orisil, it looked for alternative supplies of fumed silica and contacted OCI Korea.  OCI Korea is a manufacturer of chemical products, including a fumed silica product marketed under the name Konasil.  In response to this inquiry, OCI Korea introduced ITP to OCI USA.  ITP claims OCI USA held itself out as having actual and apparent authority to transact business in the United States on behalf of OCI Korea as its agent.  ITP issued a purchase order in October, 2008 that:  (a) identified the goods purchased; (b) the desired quantity; (c) the price; (d) delivery terms; and (e) payment terms.  The goods were ordered and paid for by ITP on October 14, 2008.

Representatives of ITP and OCI USA met later in October to discuss a more permanent business arrangement.  Prior to this meeting, ITP submitted a proposal for a distributorship arrangement.  *See Am. Compl*., Exh. A.  Although there is no specific mention of exclusivity in this proposal, ITP claims that it "articulated its desire to forge a more permanent business relationship subject to the terms outlined in the Proposal and that ITP was ***only*** interested in a relationship that

---

[2] OCI Korea is a foreign corporation with a principal place of business in Seoul, South Korea, that was known as DC Chemical Co., Ltd. ("DCC") prior to 2009.  ITP is a Pennsylvania corporation with a principal place of business in Huntingdon Valley, Pennsylvania.  OCI USA is a Delaware corporation with a principal place of business in Houston, Texas.

did not include self-competition." *Id.* at ¶¶ 39-40 [emphasis in original]. In response, OCI USA and OCI Korea informed ITP that they were already supplying Konasil to defendant Univar, a global chemical distributor. After the meeting, ITP sent an amended proposal to OCI USA that offered to bring Univar into the "ITP network to prevent detrimental self-competition." *Id.* at ¶ 44. Again, there was no specific mention of exclusivity – only the desire to avoid detrimental self-competition.[3] *Id.*, Exh. B.

The parties next met on November 10, 2008, in Philadelphia, Pennsylvania. At this meeting, "ITP stressed that any business relationship between ITP and the OCI defendants[4] had to be structured in a manner that (a) preserved the integrity of the ITP Network; and (b) was consistent with the ethical distributorship practices established by ITP within its network." *Id.* at ¶ 49. ITP contends that at the conclusion of this meeting, "the OCI Defendants orally agreed to appoint ITP as the exclusive importer and master distributor of Konasil brand [fumed silica] in the United States," and that a written announcement of this relationship would be prepared to inform Univar of the exclusive distribution agreement. *Id.* at ¶ 51-52.

In an e-mail following this meeting, David Ahn, of OCI USA, commented "I will do everything to support your company." *Id.,* Exh. C. Thereafter, ITP began securing additional sales of Konasil. E-mails dated November 25, 2008, reveal that ITP had received its first seven

---

[3] A rose by any other name would smell as sweet.

[4] The amended complaint refers to OCI USA and OCI Korea collectively as "the OCI defendants" and as a result I am unable to discern whether representatives of both organizations were present, who those representatives were, or if ITP assumes that a deal with OCI USA also bound OCI Korea. The e-mails attached to the complaint are all between representatives of ITP and OCI USA, with the exception of Exhibit N – a letter from ITP to OCI Korea.

containers of Konasil, it was pleased with the transaction, and it would be placing additional orders.  In response, Ahn discussed additional shipments and indicated that he would be discussing the "Univar situation" with "our HQ and DCC,[5] and also with Univar." *Id.* ¶ 55; Exh. D.  As of this time, exclusivity had not been accomplished, but ITP asserts that this comment led it "to believe that Univar would be informed shortly that an exclusive distribution agreement had been reached with ITP and that all future sales of Konasil to Univar would be coordinated through ITP." *Id.* ¶ 56.

Relying on this belief, ITP continued to expand its marketing and promoting of Konasil.  It also provided OCI USA with its analysis of the fumed silica market in the United States and a list of its targeted accounts – information ITP contends was a "trade secret." *Id.* ¶ 57-58.  After receipt of this information, Ahn notified Univar that OCI USA and OCI Korea had "reached an agreement with ITP, Inc. to import, market and sell Konasil fumed silica. . . . and to suspend all new marketing efforts for Konasil." *Id.* at ¶60; Exh. E.  Univar was also directed to contact ITP to pursue potential opportunities to participate in the distribution of Konasil.  Finally, Univar was asked to provide a list of any current accounts it wanted to continue to service to avoid conflicts with ITP and to protect those accounts.  This same notice was sent to another prospective distributer of Konasil.  Univar acknowledged receipt of this notice and agreed to forward ITP's contact information to its sales group.

ITP asserts that Univar continued to distribute Konasil but it did not obtain it from ITP.

---

[5] As discussed earlier, DCC is OCI Korea.

This conduct was brought to the attention of OCI USA.  Ahn responded by e-mail dated March 3,

2009, reassuring ITP as follows:

> How are you?  Long thoughts and conversation with our HQ, I've
> made the final decision on Univar situation.
>
> We made clear point that we will deal with you only and Univar has
> to contact you for further marketing of Konasil.  We told them we
> will use one agent in US which is ITP.
>
> I know Univar won't be happy about this but this is my job to deal
> with.  So, do not worry about Univar b/c we won't supply any more
> Konasil to them.  If they need to purchase, I told them to contact you.
> We won't be able to provided Konasil directly to them from now on.
>
> This decision came from me and our HQ is supporting my decision
> also.  But, our target is 10 FCL per month, so we would like your
> cooperation although all the market and movement is slow due to
> currently [sic] market situation.
>
> This is official that we are expanding 3000mt more end of this
> month, so total capa is now 9,000mt/year.  If your distributor has
> room to store our Konasil, then lets take some order [sic] asap to
> bring more inventory from Korea.
>
> I really appreciate your effort and cooperation.  I'm glad that I made
> the final decision and our HQ is supporting my decision.

*Id.*, Exh.G.

The following day, Tae Chong from Univar contacted Ahn to purchase an additional

container of Konasil.  Ahn responded to Chong by e-mail on March 5, 2009, and informed him that

he could not "sell directly to Univar anymore.  Instead, you may contact ITP for new purchasing."

*Id.*, Exh. H.  Yury Kleiner of ITP was copied on this e-mail.  On March 17, 2009, only two weeks

later, Ahn contacted Kleiner to advise him that his decision to have ITP as the exclusive distributor

had been reversed and Univar was going to be able to buy Konasil directly from OCI USA.  This

decision was made by OCI USA's headquarters and OCI Korea.  ITP was asked to work with

Univar to "adjust the marketing areas and key accounts between [the] two companies if you have a

meeting tomorrow." *Id.*, Exh. I.  That same day Univar cancelled its previously scheduled meeting

with ITP.

ITP contends that by this time it had made a complete and irreversible transition to the

marketing and distribution of Konasil.  ITP expressed its concerns with this reversal on exclusivity

to OCI USA.  OCI USA indicated the decision was temporary and made for "political reasons

because of other business interests between the OCI Defendants and Univar." *Id.* at ¶81.  Thus,

ITP asserts Univar abused its market power by refusing to distribute OCI Korea's other chemical

products if OCI Korea did not continue to supply it with Konasil for distribution in the United

States. *Id.*

## II.  STANDARD OF REVIEW

It is well established that a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a

claim can be granted if the complaint does not contains facts to establish a plausible claim. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  I will accept well-pled allegations as true

for purposes of a motion to dismiss, but the complaint must be more than "a formulaic recitation of

the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  If I can only infer the mere possibility of

misconduct, the complaint must be dismissed because it has alleged – but failed to show – that the

plaintiff is entitled to relief.  *Fowler v. UPMC Shadyside*, 578 F.3 203, 210-11 (3d Cir. 2009).

To satisfy the pleading requirements of Rule 9(b), claims of fraud must be pled with

particularity.  That is, the complaint must set forth the who, what, when, where, and how in order

to survive a motion to dismiss.

### III.  DISCUSSION

      A.  <u>Count I - Breach of Contract</u>

At the core of this complaint is ITP's assertion that it had an oral contract with OCI USA and OCI Korea to be the exclusive United States distributor of OCI Korea's fumed silica product known as Konasil.  OCI USA contends the breach of contract claim fails because it is too indefinite to be enforced and because an oral agreement fails to satisfy the statute of frauds.

To recover on a breach of contract claim, ITP must establish:  (1) the existence of a contract, including the essential terms of the agreement; (2) a breach of some duty imposed by the contract; and (3) damages resulting from the breach.  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 255 (3d Cir. 2003).

There is no dispute that ITP had an agreement with OCI USA to distribute Konasil in the U.S. market.  ITP asserts that, pursuant to this agreement, it purchased Konasil at a certain price, at certain times, for certain quantities, received delivery over a period of nineteen months, and that these terms are evidenced by purchase orders.  It is this course of conduct and other discussions and e-mails exchanged between ITP and OCI USA that are alleged to establish an oral contract for an exclusive distributor relationship.

I find these assertions sufficiently specific to survive a motion to dismiss on ITP's breach of contract claim.  I am also not persuaded that the statute of frauds precludes this claim because the breach claimed is not about the specific sales of goods but about the relationship between the parties.  A breach concerning the nature of that relationship is more comparable to an employment or franchise contact, that is:  "a contract involving two principal elements: (a) plaintiff's

performance of certain personal services for defendant and (b) defendant's promise to grant

plaintiff the exclusive agency to sell certain goods." *See Stone v. Krylon, Inc.*, 141 F. Supp. 785

(E.D. Pa. 1956).  Thus, OCI USA's motion to dismiss Count I is denied.

B.  <u>Count II - Promissory Estoppel/Detrimental Reliance</u>

Pennsylvania law defines promissory estoppel, also known as detrimental reliance, as:

> A promise which the promisor should reasonably expect to induce
> action or forbearance on the part of the promisee or a third person
> and which does induce such action or forbearance is binding if
> injustice can be avoided only by enforcement of the promise.

*Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 636 A.2d 156,

160 (Pa. 1994) (quoting Restatement (Second) of Contracts § 90(1)).  To establish a claim for

promissory estoppel, ITP must show that:

> (1) the promisor made a promise that would reasonably be expected
> to induce action or forbearance on the part of the promisee; (2) the
> promisee actually took action or refrained from taking action in
> reliance on the promise; and (3) injustice can be avoided only by
> enforcing the promise.

*Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009).

Although this is primarily a breach of contract case, ITP has alleged sufficient facts to

assert a claim of promissory estoppel as an alternative theory of recovery.  ITP believes it entered

into a binding contract for exclusive distributorship rights, but if it does not prevail on its contract

claim, ITP has also alleged that OCI USA made promises that it intended would induce action on

the part of ITP.  E-mails show OCI USA assurances that ITP had exclusive rights to distribute

Konasil, and ITP asserts that it acted on those assurances by changing its marketing strategy.  In the

face of the OCI USA representations, a finder of fact could conclude that ITP's reliance on those promises was reasonable and that it suffered an injustice when the promise was broken.  OCI USA's motion to dismiss Count II is denied.

C.  <u>Count III - Fraud</u>

To satisfy Rule 9(b) and properly allege a claim of fraud, ITP must plead with particularity the circumstances of the fraud so that OCI USA has sufficient notice of the misconduct and can present its defense.  Fed. R. Civ. P 9(b); *Lum v. Bank of America*, 36 F.3d 27, 224 (3d Cir. 2004).  Again, this claim is raised as an alternative theory of relief if ITP does not prevail on its breach of contract claim.  OCI USA contends this count must be dismissed for failure to plead with specificity.

To establish fraud, ITP must prove that OCI USA:  (1) misrepresented a material fact; (2) with scienter; (3) and with the intent to induce ITP to act; and that (4) ITP was justified in relying on the misrepresentation; and (5) ITP suffered damage as a proximate result.  *Chiles v. Ameriquest Mort. Co.,* 551 F. Supp. 2d 393, 398 n. 4 (E.D. Pa. 2008).

OCI USA asserts that ITP's fraud count is deficient because it fails to include specific information concerning the date, time and place of the fraud or identify who committed the fraud.  Although the specifics are not restated in the paragraphs following Count III, this count incorporates the earlier paragraphs of the complaint that do provide sufficient facts to permit this claim to survive a motion to dismiss.  Reading the complaint as a whole, it is ITP's claim that representatives of OCI USA, and in particular David Ahn, made oral and written representations concerning ITP's exclusive distributorship and OCI USA's relationship with Univar that did not

come to fruition.  ITP alleges these representations were made to induce ITP into a business

relationship with OCI USA to distribute Konasil and that OCI USA did not intend to follow

through on its representations.  As a result of these misrepresentations, OCI USA interfered with

ITP's distributorship network causing loss.  These facts are sufficient to satisfy Rule 9(b);

however, Count III must be dismissed on other grounds as discussed below.

D.   Counts III through VI, and IX - Tort Claims

OCI USA contends that Pennsylvania's economic loss doctrine bars ITP's claims for fraud

(Count III), negligent misrepresentation (Count IV), breach of fiduciary duty (Count V), tortious

interference (Count VI), and unfair competition (Count IX).

In general, the economic loss doctrine "prohibits plaintiffs from recovering in tort

economic losses to which their entitlement flows only from a contract."  *Duquesne Light Co. v.

Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995).  Pennsylvania law "provides that no

cause of action exists for negligence that results solely in economic damages unaccompanied by

physical or property damage."  *Azur v. Chase Bank,USA, N.A.,* 601 F.3d 212, 222 (3d Cir. 2010)

(quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008)).   The

doctrine applies even if there is no contractual relationship between the parties.  *Id.,* at 222-24.[6]

---

[6] In *Azur*, the court recognized that the Pennsylvania Supreme Court has carved out a narrow exception to the economic loss doctrine by adopting Section 552 of the Restatement (Second) when it considered a claim that involved "a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows the information will be used by others in the course of their own business activities."  *Azur,* 601 F.3d.at 223 (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285-86 (Pa. 2005)).  This exception "permits a commercial plaintiff to seek recourse from an 'expert supplier of information' with whom the plaintiff has no contractual relationship."  *Id.,* at 223-24 (quoting *Sovereign*, 533 F.3d at 180).  The Court "emphasized that its holding was limited to 'businesses' which provide services and/or information that they know will be relied upon by third parties in their business endeavors."  *Id.*  This exception does not apply in this case.

The Court of Appeals for the Third Circuit has also held that Pennsylvania's economic loss doctrine bars claims for the intentional tort of fraud. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680-81 (3d Cir. 2002) (predicting Pennsylvania Supreme Court would apply doctrine based on its acceptance of the "gist of the action" doctrine).  The Court reasoned further that the doctrine should also be applied to bar claims in tort for statutory misrepresentation claims. *Id.*, at 681 (same policy considerations apply to common law and statutory fraud claims).  Thus, Counts III and IV must be dismissed.  I shall discuss the viability of Counts V, VI and IX below.

E.  <u>Count V - Breach of Fiduciary Duty</u>

To state a claim for breach of fiduciary duty, ITP must establish:  (1) the existence of a confidential relationship; (2) the defendant's negligent or intentional failure to act in good faith and solely for the benefit of ITP with respect to matters within the scope of the confidential or fiduciary relationship; and (3) an injury to the plaintiff proximately caused by the defendant's failure to act. *Council for Educational Travel, USA v. Czopek*, 2011 U.S. Dist. LEXIS 99230, *14 (E.D. Pa. Sept. 2, 2011).

OCI USA argues this claim must be dismissed because the agency relationship alleged by ITP is not sufficient to establish a confidential relationship.  Moreover, even if there is an exclusive distributorship, there is no confidential or special relationship – rather, they were independent parties negotiating at arms length.  ITP responds that it has pled facts sufficient to establish that the parties entered into a joint venture to join forces to introduce Konasil to the U.S. market and grow their respective businesses through that venture, thereby creating a confidential relationship with attendant fiduciary duties.

Pennsylvania law provides that the parties to a joint venture owe fiduciary duties to each other that go beyond the scope of the contract.  *See Mirizio v. Joseph*, 4 A.3d 1073, 1082 (Pa. Super. 2010) (citing *Snellbaker v. Herrman*, 462 A.2d 713, 718 (Pa. Super. 1983) (stating that "a joint venturer owes a fiduciary duty of the utmost good faith and must act toward his associate with scrupulous honesty")).  In this situation, "the larger social policies embodied in the law of torts rather than the terms of the contract, are what underlie [a] breach of fiduciary duty claim."  *Id.* at 1083 (quoting *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 105 (3d Cir. 2001)).  Thus, while the contract might normally prohibit recovery for tort claims under the gist of the action doctrine, the fiduciary claim may proceed where it is independent of the contractual obligations of the parties.  *Id.* at 1085 (citing *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005) (finding no bar to a fraud claim stemming from the fraudulent inducement to enter a contract)).

ITP has set forth sufficient facts in its amended complaint to survive a motion to dismiss. ITP contends that the parties entered into an agreement to introduce and promote the sale of Konasil in the U.S. market and that caused it to drastically change its position in the market by concentrating all its efforts and resources into the promotion and sale of Konasil to its present customers.  If ITP is able to establish at trial that (a) there was such an agreement, (b) it constituted a joint venture, (c) as the result of this confidential relationship OCI USA gained access to information concerning ITP's network that it later used to its own advantage and to the detriment of ITP, then a finder of fact may conclude that OCI USA breached its fiduciary duty.  The amended complaint asserts sufficient facts that, if proved, would  support a claim for relief.   The motion to dismiss Count V is denied.

-12-

F.   Count VI - Tortious Interference

ITP claims OCI USA and OCI Korea took actions designed to harm its existing relationships with third party distributors and/or to prevent prospective relationships from developing, causing harm to ITP's business reputation.  OCI USA contends the allegations are too vague to support a claim.

To establish a claim for tortious interference ITP must show:  "(1) . . . an existing or prospective contractual relationship between plaintiffs and a third party; (2) intent on the part of defendants to harm the plaintiffs by interfering with this relationship; (3) absence of privilege or justification for such interference; and (4) actual harm or damage to plaintiffs as the result of defendants' conduct."  *Bioquell, Inc. v. Feinstein*, No. 10-CV-2205, 2010 U.S. Dist. LEXIS 124077 (E.D. Pa. Nov. 23, 2010) (citing *United States Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 925 (3d Cir. 1990)).  Here, ITP describes two existing business relationships with distributors that were interfered with by OCI USA to ITP's detriment.  ITP asserts OCI USA promised an exclusive relationship with ITP in order to obtain confidential information regarding ITP's operations and customer base and then used that information to interfere with those customer relationships to ITP's detriment.  The averments in the complaint are sufficient to support this claim.  The motion to dismiss Count VI is denied.

G.   Count VII - Violation of the Uniform Trade Secrets Act

OCI USA contends ITP's claim for violation of the Pennsylvania Uniform Trade Secrets Act, ("PUTSA"),1 2 Pa. C.S.A. § 5301, *et seq.*, must be dismissed for failure as assert a sufficient factual basis in the amended complaint – notably, that no trade secret is identified in the complaint.

-13-

To establish a claim under PUTSA, ITP must show that: (1) there were trade secrets; (2) the trade secrets are of value to ITP and important to the conduct of its business; (3) by reason of discovery or ownership, ITP has the right to the use and enjoyment of the trade secrets; and (4) the trade secrets were communicated to the defendant while it was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for OCI USA to disclose the trade secrets to others or to make use of those trade secrets itself to the prejudice of ITP.  *Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1012-13 (Pa. Super. 1999).

ITP has alleged that it provided OCI USA with specific trade secrets, including confidential market studies and reports, as well as customer and distributor lists.  ITP claims it used reasonable means to keep this information secret and disclosed it to OCI USA only because of the confidential nature of their relationship.  It asserts further that OCI USA had reason to know the information was confidential and was obtained because of the confidential business relationship and that OCI USA had a duty not to abuse that trust.  Finally, ITP claims OCI USA misappropriated and misused these trade secrets to the detriment of ITP.  The motion to dismiss count VII is denied.

### H.  Count VIII - Unjust Enrichment

To assert a claim of unjust enrichment under Pennsylvania law, ITP must allege that:(1) ITP conferred a benefit on OCI USA; (2) OCI USA appreciated the benefit; and (3) acceptance and retention of the benefit would be inequitable without paying for the value of the benefit.  *Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008).  It is not enough that a defendant has benefitted, the benefit must be unjust.  *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. 2007).

This claim is another alternative cause of action should ITP not prevail on its breach of contract claim and ITP acknowledges that it cannot recover on both.  ITP contends that the benefits conferred on OCI USA included sensitive market and customer information and entre into it's highly successful network, that OCI USA appreciated the benefit of such access, and that it would be unjust for OCI USA to retain the benefit of this information without compensating ITP.  This is sufficient to state a claim at this stage of the proceedings.  The motion to dismiss Count VIII is denied.

### I.  Count IX - Unfair Competition

Pennsylvania courts have recognized a cause of action for the common-law tort of unfair competition as defined in the Restatement (Third) of Unfair Competition.[7]  However, unfair

---

[7] The Restatement (Third) of Unfair Competition provides in relevant part that:

One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other business for such harm unless:

    (a) the harm results from acts or practices of the actor actionable by the other under the rules of this restatement relating to:

        (1) deceptive marketing, as specified in Chapter Two;

        (2) infringement if trademarks and other indicia of identification, as specified in Chapter Three;

        (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four; or

        [(4)] from other acts or practices if the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; or

    (b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.

Restatement (Third) of Unfair Competition § 1 (2010).

competition is not a catch-all for all forms of bad business practices. *Giordano v. Claudio*, 714 F.

Supp. 2d 508, 522 (E.D. Pa. 2010).

ITP asserts that OCI USA, in collusion with OCI Korea and Univar, improperly

misappropriated and misused information to unfairly compete with ITP - again referring to the

confidential market reports and lists of actual and prospective clients and customers. ITP claims

OCI USA lulled it into the belief that they had an agreement for an exclusive distributorship. Once

in ITP's confidence, OCI USA became privy to confidential and valuable information that was

shared with OCI Korea and Univar and then used to lure clients away from ITP. These assertions

are sufficient at this stage of the proceedings. The motion to dismiss Count IX is denied.

### J.  Count X - Robinson-Patman Act

ITP asserts a claim under the Robinson-Patman Act[8] alleging OCI USA and OCI Korea have

engaged in unlawful price discrimination. To recover for unlawful price discrimination, a plaintiff

must show that it suffered an anti-competitive injury from the sales of products by the defendant to

at least one customer at prices below the price of sales to at least one other customer.

ITP asserts that it "believes and therefor avers" that OCI USA and OCI Korea distributed

Konasil through Univar and other distributors on more favorable terms than offered ITP. *Am.*

---

[8] The Robinson-Patman Act provides, in pertinant part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination . . .

15 U.S.C. § 13(a).

*Compl.* ¶ 200.  ITP further believes and avers that this price discrimination prevented competition

and had a reasonable possibility of substantially lessening the competition within the Konasil and

fumed silica market.  *Id.* at 201-202.  Although this is the barest of allegations, I shall permit ITP to

pursue this claim because it is sufficient to establish a plausible ground for relief.  The motion to

dismiss Count X is denied.

### K.  XII - Action to Pierce the Corporate Veil

ITP sets forth its assertions for piercing the corporate veil as a separate cause of action

against the OCI defendants.  However, it is well established that veil-piercing is not an independent

cause of action.  *SieMatic Mobelwerke GMBH & Co. KG v. SieMatic Corp.*, 643 F. Supp. 2d 675,

683 (E.D. PA. 2009) ("[A]n attempt to pierce the corporate veil is not itself a cause of action, but

rather a means of imposing liability on an underlying cause of action, such as a tort or breach of

contract.").  The motion to dismiss Count XV as a separate claim is granted, but ITP is not

otherwise precluded from pursuing this theory of liability in connection with its other claims.

### L.  Count XV - Civil Conspiracy

Under Pennsylvania law, to state a claim for civil conspiracy, ITP must plead: "(1) a

combination of two or more persons acting with a common purpose to do an unlawful act or to do a

lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the

common purpose; and (3) actual damage."  *Gen. Refractories Co. v/ Fireman's Fund Ins. Co.*, 337

F.3d 297, 313 (3d Cir. 2003).  A civil conspiracy claim "must set forth allegations that address the

period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged

conspirators taken to achieve that purpose."  *Id.* (citing *Great Western Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010)).

ITP contends that "OCI USA, in concert with OCI Korea and Univar, intentionally engaged in a scheme to injure ITP by interfering with ITP's existing and prospective contractual relationships with the individual members of the ITP Network and others," that "OCI USA and OCI Korea acted in concert to intentionally injure ITP by making intentional and negligent misrepresentations in order to abuse ITP's trust and confidence to misappropriate ITP's confidential, proprietary and trade secret information to usurp the ITP Network; " and that "as a result of that conspiracy, ITP had, in fact, suffered damages." *Plt's Mem.* at 47-48.   The amended complaint describes conduct occurring during the approximately two-year period (fall of 2008 through November of 2010) that OCI USA, OCI Korea, and ITP dealt with each other, and supports ITP's contention that OCI USA conspired with OCI Korea to induce ITP, with false promises of an exclusive distributorship agreement, to disclosing confidential information that would benefit OCI USA and OCI Korea to the detriment of ITP.

 Again, I shall permit ITP to pursue this claim because it is more that just a formulaic recitation of the elements of a claim for civil conspiracy and is sufficient to establish a plausible claim.  The motion to dismiss Count XV is denied.

M.  Count XVI I- Vicarious Liability

Finally, ITP asserts a "vicarious liability" claim against all defendants.  ITP alleges that "[t]o the extent that OCI USA is liable to the plaintiff, at all times relevant hereto, OCI USA acted as the agent, actual and/or ostensible, of OCI Korea" and therefore, "[a]s principle, OCI Korea is liable for any and all harm and damages occasioned by the actions, conduct, and omissions of its agent, OCI

USA."

Clearly, ITP's assertion of vicarious liability relates only to one defendant – OCI Korea.
Count XVII is dismissed as against OCI USA.

## IV.  CONCLUSION

This complaint is sufficient to survive a motion to dismiss on all but Counts III, IV, XII and
XVII.  OCI USA shall answer Counts I, II, V through X and XV.  An appropriate order follows.